Good morning. My name is Craig Orent with the Federal Public Defender's Office in the District of Arizona, and I represent the appellant Kyle Strong, who is currently incarcerated at the Butner Medical Facility in the jurisdiction of the Bureau of Prisons. Let me ask, Counsel, a question of timing. Is his four months about up? It is, Your Honor, and we're expecting a report from the facility any day now. For all I know, it's already been submitted to us and waiting on my desk at the office. But as of this morning, that had not happened. Has the case moved, or is it about to be moved? First of all, Your Honor, may I say I would like to reserve about three minutes. But, no, we respectfully assert that it is not moot. First of all, as I indicated in my response brief, the government didn't raise that particular issue, the issue of general mootness. And the law now, in terms of general mootness, appears quite clear, especially in this circuit, given the Freedman case, that where you're dealing with pretrial competency issues, the issue will evade review if it's not addressed in a pretrial matter. And the Freedman court seems to be on case. And in terms of the ---- But isn't this detention under 4241d, isn't that immediately appealable by the statute? Why would it evade review? Because the commitment is traditionally for four months. And this is not an appealable issue, as in the detention context, where everything is sped up. That is not the case here. So here we asked for expedited review, and the court granted it, but it did not have to do so. We asked for a stay of the commitment from both the district court and this court, and that request was denied. In most of the cases, even the ones that have ruled against us on the merits, either there has been a stay or the matter has been expedited, and the courts have found that the issue is not moot. And one of the issues that relates to the general mootness concern that this Court has raised in the Wood case is when you have an issue of great importance. And we suggest that this is an issue of great importance. We're dealing with people's commitment without any consideration of the individual circumstances. And as far as I'm aware, outside of the immigration context, there is not a statute or rule anywhere in all of American jurisprudence that does what this statute 4241 does. You know, counsel, you suggest that there has to be an individualized determination before this kind of commitment. Now, you had a hearing before the district court and at that hearing, as I read the transcript, you suggested, yes, we want to see if this fellow can be restored, rehabilitated, but we want to do it in a community setting. You didn't really – well, at one point it was kind of ambiguous. You were suggesting he couldn't be restored, but the judge held that he was incompetent currently, that he needed to go through this process mandated by the statute, and he did have individualized consideration. So it seems to me that it's hard for you to argue that this is a case where it's facially wrong on the statute. Well, I would respectfully suggest that that analysis focuses on the wrong step of the process. It's a three-step process. And the first step is where the district court conducts a hearing and determines whether or not the defendant is incompetent by preponderance of the evidence. And in most cases, the defense counsel and defendants will concede and the parties will stipulate or submit on the record that the particular defendant is incompetent. And that finding is simply a finding as to whether or not this particular defendant fits into a group. It's not a finding as to whether or not this particular defendant in this isolated case should be committed for restoration or treatment. Well, actually, you argued it. The judge ruled. What more do you want? Well, no, we did not argue it. I was asking what the argument was about at the initial step was whether we should have an evidentiary hearing to determine, for the court to determine whether the defendant is restorable or not, and whether the commitment to the Bureau of Prisons is appropriate. And when the judge and the government expressed the view that the statute is mandatory, which we concede at this point it is, that once a finding of incompetence is made, the defendant must be committed, well, then I raise the issue of the statute being unconstitutional. And that was the issue we addressed. There is no individual determination whatsoever. Once the court, any court in the entire country in the Federal realm, makes a determination that a defendant is incompetent, that defendant figuratively becomes a member of that incompetent defendant group, and everybody, without exception, is transferred to the Bureau of Prisons. And it leads to absurd results. And let me give you, the Court, an analogy. Counsel, I want to take you back to this transcript. There was considerable discussion about whether he was restorable. You wanted him to be in a community facility. And so it seems to me, and the judge says, no, the statute says this process should take place at Putner. That's correct. But there had been a preliminary hearing that he was incompetent and that there was some chance of his being restorable. One of the statements in one of the psychiatrist's reports stated that. And that's what the judge decided. I find it very difficult to buy your argument. With all due respect, the district court did not make a determination as to restorability. That was the argument, that was the objection we were making, is that the district court should make that determination. And I would not be here today had the judge held a hearing and determined on his own that the defendant is either restorable or there's some uncertainty as to whether he's restorable, and it's in the best interest of everyone for him to be committed. But that's not what happened. The judge relied on the statute and committed him based on the mandatory nature of the statute. And the absurd results that I was going to refer to is in that first step where the judge. But, counsel, that was in the context of whether he was sent to a community facility for restorative attempts or Putner. And he said the statute requires that we do it in the Federal place. So I'm, again, suggesting that I can't agree with you. I respectfully beg to differ. That was not the issue. The court was generous at the very beginning stages, if Your Honor recalls. The discussion that you're referring to was at a status conference. We never actually even had a hearing as to competency. These were status conferences where the judge was trying to flush out what the issues were. And with all due respect to Judge Rosenblatt, he even expressed some confusion as to what the issues were and then asked us to brief it. And when we came back before the court, the last time, it was a status conference. And once we explained to the judge squarely where we stand, the judge said, well, can I, since we are all in agreement that the defendant is incompetent, and because I'm not going to grant you a hearing to determine whether or not local treatment is sufficient because the statute doesn't permit me to, can we convert the status conference into the competency hearing? And both parties said yes. And from that point forward, technically on the record, it became a hearing, and the judge said, we never conceded, and the doctors never said that the defendant was restorable. In fact, it was the opposite. The doctor that we retained and who examined the defendant the first time expressed the opinion that because the defendant was mentally retarded, it was unlikely that he would be restorable. It was unlikely. But he said to the judge, he said, it was one of the two doctors following up that, and the judge said, but if the court wants, I suggest that the court try outpatient restoration classes in Maricopa County, which is available. But what's the deprivation that your client suffered? Because at the point where he was sent to the facility under the statute, he was going back into detention anyway because he had violated the terms of the release. Well, I don't necessarily agree with the premise that he was going back into custody anyway. As we argued in the briefs, and in fact, the district court acknowledged, the district court relied significantly on the pending commitment to Butner in reaching its detention decision for the violation. I mean, let's face it. The defendant had a single beer after being out for nine months and had no blemishes. The district court had warned him that that would be caused to revisit his earlier decision that he needed to be detained before the hearing. That's correct. And clearly, the court should and did revisit the issue. But when I stood up and asked the judge to address whether or not it was influenced by the commitment, it said it was. In fact, one of the things he did, but it can't say that it's crystal clear because he goes on to make the point, and I think this is my concern as well, he reaches the conclusion that Mr. Strong is a danger to the community. And I read what he said, and I concede it's not here. I read what he said is, well, that tells me what it is I should do rather than simply take him into custody and put him in some kind of facility or program there in Arizona. He's headed for Butner. I'm just going to tell the marshals, rather than let him voluntarily report, take him into custody and take him to Butner. And that, I understand, is what happened. And you're entitled to challenge the determination that he's a danger in the commitment, and in fact did, and a panel of this Court affirmed. So today I don't know that anything could possibly change because right now he's subject to a commitment order. No, it can't. What's the deprivation today? The deprivation is that the defendant is still facing criminal charges, still under the jurisdiction of the district court. And as I responded to Judge Fletcher earlier, we haven't received the report back from Butner yet. In theory, the report could come into our office tomorrow saying that we're not certain about the defendant's prognosis. We're asking for more time. We're asking for another four months. And the statute permits that. But I have trouble with the deprivation, because if right now, if subsequent to the hearing where the judge says, okay, he's not competent, he's headed for Butner, and let me take your characterization. The judge says, I don't have discretion about that. The statute says he's going to be in custody during this evaluation period for up to four months. But a few weeks later, before he's been ordered to report, because he's still in the community at the time, he drinks. And the judge says, that brings the curtain down. He's a danger to the community. He's in custody. Now, before that order, I understand the issue. I understand the alleged deprivation. But from that point on, he's in custody, whether it's at the Federal Hospital or whether it's someplace else, he's in custody. So what's the difference now? Well, I guess I missed the issue a moment ago. If we're talking about ripeness, then the reverse of what I said a moment ago could happen. We could get a report tomorrow from Butner concluding that the defendant is competent. The district court is required by law to hold a hearing to determine whether or not it agrees with that assessment. And let's assume the judge does agree with that assessment. Now we have a changed factor that the court can consider at our request in determining the defendant's release status. One of the arguments by the government below is that because the defendant's incompetent, that influenced his danger to the community. And it seems clear to, even though there may be confusion as to why the judge ultimately detained the defendant at the detention hearing, it does seem clear that he was influenced by the fact that the defendant was pending commitment and the defendant was incompetent. So if we – if the court finds him competent tomorrow, the next day we can come back to the court and say the circumstances have changed. Butner has concluded that he's not competent. In fact, Butner may even conclude that he's not a danger. That's one of the requirements of the judge's order that Butner determined during the four-month period. So the court must – Well, if that happens, I think tomorrow you have grounds to go back to the district court, and whatever he says, you have grounds to appeal that determination. But today, I'm not sure that there's anything that's still alive to be appealed to us. But under the – Because the last thing our court did was to affirm the commitment. So no matter what we do, until you get the report from Butner, until the district court decides to have something different with regard to the competence issue, he's subject to the commitment order. Well, that's true. But that, with all due respect, ignores the case law, Friedman, for example, from this Court, on the issue of mootness relating to competency proceedings. There is a reasonable likelihood that this defendant will say – could face the same circumstances that he's facing now. As Dr. Berger from Butner stated in the Duhan case, which I submitted to the Court just prior to argument, that was a case before a magistrate judge. He acknowledged that someone with mental retardation, like Mr. Strong, has ebbs and flows. And he may be deemed competent today by the district court, but in a month be found incompetent. And now we're right back to where we started. But this is so speculative. At first, he would have to be – you'd have to succeed in your argument that he should be released from detention. Then some other incident would have to occur where they would want to revisit the question of competency. Well, clearly, there is some degree. And so we're very far afield from where we are today. Well, I agree that there is speculation involved, but there is a spectrum of speculation. I mean, is it rank speculation or is it reasonable speculation? And I suggest in this case it's reasonable speculation, given that, if you look back at the circumstances of this defendant, no criminal record but the allegation, a finding by the prior doctors that he's unlikely to be a danger in the future, and he survived well outside of the prison context, in the pretrial context, for nine months without a single problem, and then had a single beer, and admitted to the facility that he had a single beer, and then remained in the facility for a week, knowing that he was going to be arrested, and the judge detained  him. Now, if the judge detained him based on just the drinking of a single beer, I mean, that raises some questions in itself. But we approved that, the Ninth Circuit. The Ninth Circuit approved the totality. It left the matter in the status quo. And as I said, the Court detained him not based on just the beer. I mean, the Court said in its own words that it was relying on his, depending on how you view it, it is somewhat ambiguous, either the fact that he was incompetent or the pending commitment. Now, let's look at what's going to happen. Let's say the report says, yes, we agree he's incompetent. We agree he can't be restored. And from everything we see here, he doesn't seem to be a dangerous community. Now, there has to immediately follow a new hearing in the district court. Is that not correct? That is correct. And all of those issues will be up for decision by the district court at that time. That's correct. Let's say that the district court decides, indeed, he's incompetent, he's not restorable, and says, I disagree with Butner. I think that he is a danger to the community. You then have a right to appeal that and have a full hearing of that. So the current posture of this case, moot or not, seems like kind of a fool's errand. Well, I may have the right to appeal that issue, but it's unclear as to what the district court would be required to do if it had Butner saying he's not competent or even that he is competent, and then the district court concludes that he's still incompetent. What does the district court do? Does he send him back to Butner where this issue would come up right there? That's a different case than the one that we have. We have a case that complains about the fact the statute appears to require incarceration for the evaluation period up to four months, which is about to end. And we can speculate about what happens next, but, no, we're not ordinarily in the business of dealing with what-ifs. The case that we've been working on is a case that deals with the four months. I understand mootness has the capable of, I mean, frequently occurring but evading review, but you've got the twist of having now a commitment order because the judge determined he was a danger to the community. And whether or not the fact he was destined for Butner eventually entered into it, there's no way around the fact that he was taken into custody. And nothing's going to change that until the facts are changed in front of the district court. So what's left for us? Well, I mean, there's nothing left if I accept Your Honor's premise, but respectfully, we disagree. I mean, mootness isn't that clear. There's an important interest at stake that we're asking the Court to consider. And also, as I said, there has to be some degree of speculation. The case law, you know, assumes that. And if this Court today were to say the statute is unconstitutional, it's not mandatory, I'd be before the district court tomorrow saying, Judge, you have the ability to reconsider all these issues. That's a new factor. And as of tomorrow, Mr. Strong could be released from custody based on this Court's decision. I'm running out of time, and I do want to reserve a minute. But let me just say, to the extent that the Court does get to the merits, I would cite DeAngelis v. Pluot, which is in my papers at page 17. That is a district court case from 1980 that held this Connecticut State statute, which was virtually identical to the Federal statute, unconstitutional, citing Jackson, citing Jackson v. Indiana, for the exact same reasons that I'm purporting to today, that the Federal statute is unconstitutional. That opinion is a blueprint for what I would hope this Court would write in its opinion. And I will point out that Jackson itself distinguished the setting before it and the initial detention. We suggest that the prior circuit cases are wrong. Jackson said that it was not considering the initial commitment when it distinguished its case from United States v. Greenwood, its prior Supreme Court case 16 years earlier. So with that, Your Honors, I'll sit down. Thank you. Thank you, and we'll hear from the government. May it please the Court, Mr. Arendt. My name is Roger Dockin. I'm an assistant U.S. attorney in Phoenix. You know, the defendant would have us believe that he's just a defendant or a citizen that basically was detained and put in a mental hospital without any individualized consideration. You know, that would not be correct. We have a very serious dispute here over what happened in this case, what the facts of the case are, because, first of all, as the Court's pointed out, he's been detained as a danger to the community. Number two, he's appealed it to this Court, who's found that that was appropriate. Number three, he's the one who we're not in dispute whether he's incompetent. He's the one that requested a finding of incompetence. He's the person that's been charged with a crime, a very serious crime, actually a life-threatening one. You know, and he's the person today, I guess, that still asserts that he's not competent to stand trial and that the district court asserted he never will be, can't be prosecuted for this crime or presumably for anything in the future if he's permanently incompetent. You know, and the district court agreed that this is a person by the preponderance of evidence was not competent to stand trial. So for the most part, what we're talking about, we're not talking about a normal citizen. We are talking about a person that he's so severely impacted is unable to make rational choices. That's what we're talking about. Let me break this into a couple of pieces. I mean, I understand the collection you've put together, but let me break out the danger to the community. Because that didn't happen. That determination wasn't made at the time of incompetence. That came a little bit later. At the time, he was, as you say, he himself applied for that determination by the court. He's not proclaiming, I'm a danger to the community, I'm incompetent. You can be incompetent without being a danger. And indeed, at that point, the judge did not order him taken into custody. He left him in place in the program he'd been in for some time, pending being taken into the program and being sent to Butner. Sometime later, he drank. The court determined that he was a danger to the community. But let's hold that to the side for the moment. I think the challenge being put here is that the statute, according to the district court, and I look at the statute, I see the same thing, does not appear to have any option. If you're determined incompetent, there's only one route to go, and that route is up to four months at Butner. There's no possibility of a community placement, of continuing the program he's in. And the district court said the statute says this is what's going to happen. Well, I think the challenge put is, does that comport with Jackson? Can you have an automatic custody up to four months simply because you're determined to be competent without a finding you're a danger to the community, without a conviction on the underlying offense? Can Congress say automatically you're inside for four months? Yes. And what you need to look at is, was Congress rational in this decision? Because that's, of course, what the statute says. It's basically automatic if you're found incompetent. And the DeMora case that they cite or the Jackson case, you talk about the standards. Is it rationally related to the purpose that Congress is going to? And let's look at what they did. And let's look at what the type of person that they're dealing with. First of all, the cases that we cited talked about the hospitalization in Filippi, D'Onofrio, and Farrow talk about a hospitalization would permit a more careful and accurate diagnosis for a court that's facing a serious decision. So we're starting from that. Is that rational when you know that a hospitalization is going to lead to better treatment? Well, next, this is for the whole United States that Congress is doing this. So they're setting up a uniform policy, uniform treatment all around the United States. We don't have to rely on the competency of, you know, some state, local, or whatever medical system. So we're going to have to look at what the health care system is going to be. We're going to have to look at what the health care system is going to be and whether it's going to be appropriately funded this year. Is it rational when you're put in a hospital which is 24-hour a day, seven-day-a-week care by a wide group of professionals as opposed to maybe seeing a doctor a couple times a week? Is it rational when you're in a place where they're able to observe your interactions all the time, how you interact with other people, and you're trying to make those determinations? Let me pose the question this way, because I take it you also take the position the statute is kind of one-directional. It says this is what's going to happen. It doesn't leave the district court other options. But suppose the individual involved is somebody who is perceived as being no threat whatsoever to the community. The offense that he's charged with is not one that involved the violence that we have here. It was filing a false tax return. But he's got severe mental problems, and so he's incompetent. Not a danger, incompetent. The statute says you're going to be in custody for up to four months as part of our examination and potential restoration process, and yet that's not necessary from a danger to the community perspective. And he hasn't been convicted of anything yet. And the court might well think, you know, he'd be better off if he stayed where he was, stayed with a community program that he might already be part of. But I don't have that option. I mean, in factual terms, that would present a more sympathetic case, but the statute here doesn't give the option. So I think what defendant is arguing is that his case presents kind of that case. Change the facts a little bit. The statute doesn't give the judge any choice. If there's no danger to the community, is it proper for the statute to say no choice, you've got to go to custody for four months? Yes, it is. And the reason why is look at the defendant that we're faced with. We're faced with a defendant who's unable to make rational choices for himself, so Congress has made that. They've made the choice of where you should be treated, where there's going to be the best chance for a restoration. For example, you're going to be in a hospital. We can ensure that you're not taking methamphetamine or PCP, which has an adverse effect upon the restoration process. Let me ask you this about the statute. The statute doesn't say for four months. It says for such reasonable period of time as is necessary to make this determination. In practice, has that element of the statute been given any content? Is it just an automatic four months, or has the person in custody been under 4241 been held only for shorter periods, if that's all that's reasonable under the circumstances, such as the circumstances that Judge Clifton identified? It's all over the place. Some go and they, you know, perhaps some have a schizophrenic problem and their medications, they're put on medications and it's stabilized and they're out, they're back pretty quickly. Some have had severe mental problems for years, are there, and they ask for additional time. So it's hard to say what's going to happen. I don't know what's going to happen in this case. And, you know, as soon as we get back, maybe they will ask for more time. Maybe they'll say he needs schooling. I don't know. He came from a very remote area. He's at least somewhat retarded. He's a very remote area with severely underperforming schools. So I don't, you know, maybe he just needs education. I don't know. But as a general matter, there aren't any guidelines that have been promulgated for how to give effect to this statute or any practices that have been formalized in any way that you're aware of. No. I guess the point is that Congress had them hospitalized, and I know the defendant would like to call it incarceration because, of course, he doesn't want to be there, so I suppose in some respect it is. But they wanted them hospitalized because they feel that it's a better treatment. Well, he's not free to leave, right? Pardon? I mean, he's not free to leave, so. That's true. But that's exactly part of the reason why you want them hospitalized, because you want to know besides knowing what medications you're giving him, how they're acting, you want to make sure he's not taking something else, and you want to observe him this whole time. You know, it also forces him to take the restoration program seriously when you're in an inpatient place. You know, by doing this, by adopting the present hospital system to send him there, Congress was able to immediately use an existing system and one that already has resources without setting up a complete new bureaucracy to, you know, cover somebody every place. You know, and when they passed this, they specifically stated that they were changing the law so that it would be in accord with Jackson v. Indiana. So clearly they were aware of the Supreme Court and trying to be in compliance. You know, and as I said, you know, Congress was making a rational choice for people that really can't make rational choices for themselves. You know, the defendant concedes that the government has a compelling interest in trying to restore him to competence. You know, I don't think defendants necessarily, I don't know about this defendant, but defendants do not necessarily have the same goal. You know, being restored could probably be against their penal interests, particularly if it's a severe crime. So I think what it comes down to here is if you agree that society has and should have a compelling interest in restoring him, a temporary hospitalization really is a rational decision on the part of Congress. You know, and what you need to put it in context is what's going to be coming up. The 4246 hearing, you know, they're going to put us to a heavy burden to show whether it's restorable, not restorable, whether he's dangerous, not dangerous, whether the case should be dismissed, not dismissed. And basically the situation they were trying to get us in in district court is to have to come to that hearing without our four-month evaluation and study, coming to this hearing with no evidence. And, you know, why would that be? Because, of course, you know, their courses, they want the case dismissed. And what would happen if we don't have an evaluation and don't have individualized, really closely individualized study? Now, if I could address mootness for just a moment, you know, the defendant argues about others. This could clearly happen to somebody else, a released defendant being shipped off to Butner. Certainly. How about a released defendant in the middle of a 4241 hearing get revoked? Boy, that seems pretty unusual. But I guess what it comes down to is there isn't any remedy for Mr. Strong because he's been detained for violating the conditions of release. Now, the defendant argues that, oh, it's just because of the finding of mental incompetence. Well, if you look at the release statute, it talks about that's one of the things you can consider is one's mental status. And the Court did, in fact, consider it under 4142G. Counsel, the order that was appealed from was the September 13, 2006 order. Do you agree with that? I can't remember the date, I'm sorry, Your Honor, but that's probably it. But in that order, the judge orders him to be sent to Butner. So it's all right to say that he was committed, in part, they took away his capacity to be out in the community because he had offended. But when the judge enters the order, he's sending him to Butner because of the statute and the need for attempting restoration and evaluating him. So it seems to me that this is an issue that's properly before us and it's not moot. Well, certainly this issue could come up. And it was. When the judge issued the initial order, he was to report to Butner himself. And we made some determination to make sure that he would be able to change planes in Dallas and all of that sort of stuff to get to Butner. And then after pretrial services filed, well, I think what happened is he got kicked out of recovery homes and then pretrial services filed a petition to revoke his release. And then the judge, basically the difference was you're still going to Butner, but the marshals are taking him rather than you're taking yourself. So that's kind of the difference. Yes. And there's a lot of cases where. You know, usually it's how often does this come up is whether you decide whether or not there's a lot of exceptions to the mootness, the mootness doctrine. Tons of them and a lot of them really come down to is this the kind of thing that comes up all the time. I don't think the part about getting revoked in the middle comes up all the time. I think the other comes up all the time. People on release getting sent off to Butner. I think that that happens a lot. And I guess the question is, does that come within the exceptions to the mootness doctrine or does it? I would think that the government would like to have this case decided on the merits. Well, you would think so. Yes. Well, you're here for the government. You want it decided on the merits or do you want to pursue mootness? Well, certainly, because I strongly believe in the merits and I've listed, well, I've listed many, many rational reasons for Congress's decision today. All of the sister circuits that have heard this have ruled in the favor of the government. So certainly. I suppose to use a football term, I put the mootness issue in there. So if you decide to punt, here it is. Thank you. Roboto. Thank you, Your Honor. I would point out that even if the defendants who are in custody have a right to an individual determination, because it's not necessary for every defendant in custody to be sent thousands of miles away to Butner, North Carolina. This defendant could have been treated locally by the State of Arizona, but the judge was prohibited from even considering that, even if he was in custody. So that is an issue. I would also point out the two cases that I cite in my response, the Boiga Grain case, which is another circuit, and the Wood case, which is from this circuit. And in both of those cases, the defendant was taken into custody in a manner similar to what happened here. In the one, he was taken into custody for failing to appear for the evaluation, for the outpatient evaluation in the first step. So the judge took him into custody. So while the appeal was pending, he was in custody, not just for the commitment, but because he also failed to appear. In the Wood case, the defendant was being held in custody on a different order than the one that was being appealed. And that related to competency as well. And I would, I just want to say that it may not be assumed that confinement in hospital is beneficial environmental therapy for all. That was from the late Chief Judge David Bazelon, and that's what the government is saying is the case. And the Supreme Court has said, quote, Sometimes the grossest discrimination lie, can lie in treating things that are different as though they were exactly alike. And that's what the statute does. We have different individuals, different degrees of mental illness, different interests at stake. A defendant could be harmed by being sent off to Butner, but the court has prohibited from taking that into consideration. In terms of the four months, Judge Ikutu, the statute doesn't permit the district court to have any oversight as long as the defendant's in custody. It requires a periodic report, but the report is due biannually. So six months after his commitment, but yet the commitment is traditionally for four months. And then there's also a provision that under section 4247 that lets the defense counsel ask the court to intervene where counsel believes that the commitment is no longer progressing appropriately, but it says no earlier than 180 days. So this commitment to four months is a commitment for four months, and that's how it's done in practice. And there may be some cases that are less than that. Your time has expired. Thank you. Thank you. Thank you for your argument. We thank both counsel for the argument. The case is adjourned.
judges: B. Fletcher, Clifton, Ikuta